# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1579V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | \* | Chief Special Master Corcoran |
| WILLIAM MINNER, | \* | |
| | \* | Filed: February 17, 2026 |
| Petitioner, | \* | |
| | \* | |
| v. | \* | |
| | \* | |
| SECRETARY OF HEALTH AND | \* | |
| HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Laura J. Levenberg,* Muller Brazil, Dresher, PA, for Petitioner.

*Ryan D. Pyles,* U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON RECONSIDERATION GRANTING IN PART AWARD OF ATTORNEY'S FEES AND COSTS[1]

On July 15, 2021, William Minner filed a Petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petition, dated July 15, 2021 (ECF No. 1) ("Pet."). Petitioner alleged that an influenza vaccine he received on August 31, 2020, caused him to develop brachial neuritis. Pet. at 1. I issued my decision in this case denying entitlement on September 25, 2025. Decision, dated Sep. 25, 2025, (ECF No. 54). No further appeal was taken.

Petitioner subsequently filed his motion for attorney's fees and costs accrued while litigating this claim. Motion for Attorneys' Fees and Costs, dated Dec. 9, 2025, (ECF No. 58)

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

("Mot."). Petitioner requests a total of $93,153.06 (comprised of $46,222.50 in fees and $46,930.56 in costs) for work performed on the matter. *Id.* at 2. I issued a decision awarding Petitioner's motion in part shortly thereafter. *See* Decision, dated Sep. 25, 2025 (ECF No. 54).

On January 22, 2026, Petitioner moved for reconsideration of my fees decision. Motion, dated Jan. 22, 2026 (ECF No. 61). He specifically questioned my reduction of his counsel's 2022 hourly fee rate, which I had reduced from the requested $350 to $275 an hour. *Id.* at 3. On February 4, 2026, I granted the motion for reconsideration, vacating my prior fees decision so I could evaluate further the merits of his rate objection. Order, dated Feb. 4, 2026 (ECF No. 62). Respondent has not filed an objection to my ruling, making this matter ripe for adjudication.

For the reasons set forth below, I hereby grant Petitioner's motion in part, awarding fees and costs in the total amount of **$82,773.06**.

## ANALYSIS

### I.    Petitioner's Claim has Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not automatically entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely. The act of an attorney's withdrawal from a case is often deemed an appropriate circumstance for paying fees—although because the case is still pending, a claimant must make the good faith/reasonable basis showing relevant to unsuccessful claims.

A claim's reasonable basis is demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). Simmons, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

2

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Also, relevant herein are the standards governing interim awards—meaning fees awards issued while a case is still pending. *See generally Auch v. Sec'y of Health & Hum. Servs.*, No. 12-673V, 2016 WL 3944701, at *6–9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *5–9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It is well-established that a decision on entitlement is not required before fees or costs may be awarded. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013); *see also Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). Interim award requests are subject to the same reasonable basis inquiry applied to unsuccessful but completed matters, since in the context of an interim request the claim literally is not yet been found to be "successful."

There is no presumption of entitlement to interim awards, but special masters may in their discretion permit such awards, and often do so. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim costs are subject to the same standards governing fees. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Fester*, 2013 WL 5367670, at *16. However, there must be some showing that a petitioner's circumstances render an interim award just. Criteria that I have found to be important in determining whether an interim award should be permitted include: 1) whether the amount of fees requested exceeds $30,000; 2) where expert costs are requested, if the aggregate amount is more than $15,000; and/or 3) whether the case has been pending for more than 18 months. *See Knorr v. Sec'y of Health & Hum. Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017).

Although Petitioner's claim was ultimately unsuccessful, I find that there was sufficient objective basis to entitle him to a fees and costs award. There was objective record evidence that Petitioner was reasonably diagnosed with brachial neuritis after the relevant vaccination, and the

theory that certain covered vaccines can cause this condition has reliable scientific support. Thus, and in light of the exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein.

## II.    Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner's Motion requests the following rates for her various attorneys, based on the years work was performed:

|  | **2020** | **2021** | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|---|---|
| **Laura Levenberg (Attorney)** | N/A | $275 | $350 | $375 | $400 | $425 |
| **Bridget McCullough (Attorney)** | N/A | $275 | N/A | N/A | N/A | N/A |
| **Stacie Bole (Attorney)** | $125 | $125 | $125 | N/A | N/A | N/A |
| **Stacey Bowman (Paralegal)** | $125 | $125 | N/A | N/A | N/A | $170 |
| **Ginny Schaffer** | $125 | $125 | $125 | N/A | N/A | N/A |

| | | | | | | |
|---|---|---|---|---|---|---|
| (Paralegal) | | | | | | |
| **Katy Yoos** (Paralegal) | N/A | $165 | N/A | $165 | N/A | $180 |
| **Laura Fox** (Paralegal) | N/A | $125 | N/A | N/A | N/A | N/A |
| **Tereza Pavlacsek** (Paralegal) | N/A | $160 | $160 | $177 | $177 | $180 |
| **Erik Pavlacsek** (Paralegal) | N/A | $125 | $125 | $140 | $155 | $170 |
| **Marykate Petrone** (Paralegal) | N/A | N/A | N/A | N/A | N/A | $125 |

Mot. at 7–22.

Ms. Levenberg and the staff of her firm practice in Dresher, PA—a jurisdiction that has been deemed "in forum." Accordingly, she should be paid forum rates as established in *McCulloch*. *See Long v. Sec'y of Health & Hum. Servs.,* No. 20-1781V, 2023 WL 2053928 (Fed. Cl. Spec. Mstr. Feb. 17, 2023); *Askins v. Sec'y of Health & Hum. Servs.*, No. 21-1907V, 2024 WL 4930691, at *2 (Fed. Cl. Spec. Mstr. Nov. 5, 2024). The rates requested are also consistent with what has previously been awarded for the work of these attorneys, in accordance with the Office of Special Masters' fee schedule.[3] *Brickhouse v. Sec'y of Health & Hum. Servs.,* No. 22-1377V, 2025 WL 1517974, at *1 (Fed. Cl. Spec. Mstr. Apr. 28, 2025); *Milligan v. Sec'y of Health & Hum. Servs.,* No. 21-1382V, 2023 WL 2054232, at (Fed. Cl. Spec. Mstr. Feb. 17, 2023). I thus find no cause to reduce them in this instance (and in this revised Decision, I accept Petitioner's request that attorney Levenberg receive $350 per hour for work performed in 2022). I also deem the time devoted to the matter to be reasonable. I will therefore award all fees requested without adjustment.

## III.    Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters

---

[3] OSM Attorneys' Forum Hourly Rate Fee Schedules. https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited Feb. 4, 2026).

5

have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at \*4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $46,930.56 in outstanding costs, including the filing fee, medical record retrieval costs, mailing costs, and costs associated with two experts: Omid Akbari, Ph. D., and John Hixson, M.D. Mot. at 24. Documentation was provided for the Court's filing fee, medical records requests, copying expenses, and mailing expenses, and I grant these costs in full.

Drs. Akbari and Hixson also submitted invoices for the work they performed. Dr. Hixson prepared two reports, invoicing $7,250.00 for his time (14.5 hours for work performed in 2024 at $500 per hour). Mot. at 48–49. This rate is consistent with what has been issued in the past for Dr. Hixson's work, and I find his time spent on this matter reasonable. *See, e.g., Askins,* 2024 WL 4930691 at \*3; *Marshall v. Sec'y of Health & Hum. Servs.,* No. 21-1445V, 2024 WL 3407635, at \*3 (Fed. Cl. Spec. Mstr. June 11, 2024). Therefore, I grant Dr. Hixson's fees in full.

Dr. Akbari prepared two reports, billing the significantly greater sum of $38,060.00 (claiming 69.2 hours for work performed in 2023 and 2024 at $550 per hour). Mot. at 42–45. Special Masters have repeatedly found that an hourly rate of $550 an hour for Dr. Akbari's work is excessive, however, and have reduced his rate to $500 an hour. *See, e.g., Williams v. Sec'y of Health & Hum. Servs.*, No. 19-1269V, 2024 WL 1253768, at \*3 (Fed. Cl. Spec. Mstr. Feb. 28, 2024); *Bristow v. Sec'y of Health & Hum. Servs.,* No. 19-457V, 2022 WL 17821111, at \*5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (listing cases in which Dr. Akbari has been awarded $500.00 per hour). In keeping with past awards, I shall reduce Dr. Akbari's rate to $500 an hour.

In addition, the time Dr. Akbari spent on this case was somewhat excessive. Dr. Akbari spent nearly 70 hours on the matter, reviewing medical records, medical literature, and then preparing his written reports. Mot. at 42–45. This is over four times the time spent by Dr. Hixson to perform comparable work. Dr. Akbari's billing practices have in prior cases been found to be excessive or vague, and accordingly the time he devoted to a matter has been reduced. *See,* e.g., *Nieves v. Sec'y of Health & Hum. Servs.*, No. 18-1602V, 2023 WL 7131801, at \*5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023); *Reinhardt v. Sec'y of Health & Hum. Servs.*, No. 17-1257V, 2021 WL 2373818, at \*4 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (finding Dr. Akbari's billing to be "well in excess of the time spent by other experts in cases of comparable complexity").

Dr. Akbari's hours were similarly excessive in the present case, and I shall reduce them by 20 percent (in keeping with my discretion to make across-the-board reductions, rather than line-by-line detailed reviews of a bill/invoice). This results in a reduction of Dr. Akbari's hours by

6

13.84.[4] With both the reduction in hours and lowered hourly rate, Dr. Akbari's overall reduction in costs totals **$10,380.00**.[5]

## CONCLUSION

Based upon the above, and in the exercise of my discretion, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs, and award a total of **$82,773.06 (reflecting of $46,222.50 in attorney's fees and $36,550.56 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.** In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[6]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[4] Calculated by: (69.2 hours x (20% ÷ 100)) = 13.84

[5] Calculated by: $38,060.00 – ((69.2 hours – 13.84 hours) x $500 an hour = $27,680) = $10,380.00

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.